IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
PINE BLUFF DIVISION

**PEGGY BATTLES**                                                                                          **PLAINTIFF**

v.                                          **Case No. 5:10-cv-269-KGB**

**THOMPSON HOSPITALITY
SERVICES, LLC**                                                                                   **DEFENDANT**

**OPINION AND ORDER**

Plaintiff Peggy Battles brings this action against defendant Thompson Hospitality Services, LLC ("Thompson Hospitality") under the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621 *et seq.* ("ADEA"). Thompson Hospitality moves for summary judgment (Dkt. No. 73). Ms. Battles has responded (Dkt. No. 80), and Thompson Hospitality has replied (Dkt. No. 83). For the following reasons, Thompson Hospitality's motion for summary judgment is granted.

**I.     Factual Background**

**A.     Employment at Thompson Hospitality**

Ms. Battles began working for Thompson Hospitality as a Food Service Manager on June 15, 2009. She was hired by Regional Director Donan Chicot to work at Thompson Hospitality's operations at the University of Arkansas Pine Bluff ("UAPB"). At the time she was hired, she was 50 years old. Ms. Battles contends Mr. Chicot did not know her age at the time he hired her.

Ms. Battles's duties included training employees, inventory control, ordering correct items, food preparation, sanitation management, controlling food labor costs, and staying within her budget. Her supervisor was Johnny Stokes who reported to Mr. Chicot.

Ms. Battles was originally assigned to the Davis Unit, but a few weeks after she was hired, she was reassigned to the Delta Unit. On August 4, 2009, Ms. Battles's son was on

campus and stopped by the Delta Unit. As a result of her son being there, one of the employees learned Ms. Battles's age, and there was a discussion about her age among the employees and Mr. Stokes. Ms. Battles contends that, after this event, she was subjected to harassment based on her age by Mr. Stokes in the form of belittling comments. She admits she did not complain about any comments for at least several months.

Ms. Battles alleges that Mr. Stokes accused her of having dementia when she did not remember something. She estimates that he made the dementia comment in "probably four meetings" and not at any other time. She alleges that he accused her of having Alzheimer's disease in a similar context and that he made the Alzheimer's disease comment only once or maybe twice. On a single occasion, Mr. Stokes allegedly compared her to another employee by saying something to the effect, "I don't know why you can't cook like [her] because you are the same age as she is, and she is in her seventies." She also claims that, any time someone complimented her attire, Mr. Stokes allegedly said she was trying to dress like students. She estimates this type of conduct happened weekly for a period of time.

After working in the Delta Unit, Ms. Battles returned to work at the Davis Unit for a short time during the summer of 2009. Then, on or about September 4, 2009, she was reassigned to the JBJ Unit, which was physically separate from the Davis and Delta Units. She was happy about the move and stayed at the JBJ Unit for the duration of her employment. When the belittling comments allegedly started, Ms. Battles saw Mr. Stokes on a regular basis. However, after Ms. Battles moved to the JBJ unit in early September 2009, she did not see Mr. Stokes much at all. She estimated that, after early September 2009, Mr. Stokes came to her unit only eight times during the remainder of her employment. She went to his unit to help him a "few" times. According to Ms. Battles, the comments stopped in December 2009 or January 2010, and

there was only one alleged "dementia" comment from Mr. Stokes between December 2009 and March 2010.

On September 10, 2009, Ms. Battles received her first disciplinary write-up, which was labeled "first warning verbal," for giving her keys to an hourly employee without permission. She signed off on the disciplinary notice. She alleges that, as a result of the write-up, she was denied a bonus.

The next day, Ms. Battles authored a lengthy grievance outlining what she described as "everything" that had transpired until that point in time. Ms. Battles said that the grievance was an "accurate and complete summary" of her complaints to date. Despite its detail, the September 11, 2009, complaint did not mention any unlawful harassment or discrimination based on her age. She sent it to Mr. Chicot only but also discussed it with Mr. Stokes.

On September 25, 2009, Ms. Battles prepared another lengthy written complaint and faxed it to Lydia Martinez, an employee in Thompson Hospitality's Human Resources Office, and Maurice Jenoure, Thompson Hospitality's Chief Operations Officer. She described in it what had transpired since her September 11, 2009, complaint. Although the September 25, 2009, complaint did include the phrase and words "retaliated against," "retaliation," and "harassment," Thompson Hospitality contends there is no suggestion that those references were directed to *unlawful* harassment or retaliation under the ADEA. There is no mention of Ms. Battles's age, nor is there any reference to any age-based comments, in her September 25, 2009, complaint.

Ms. Battles spoke with Mr. Chicot and Mr. Stokes about her complaints by phone, and they discussed problems with Ms. Battles's preparing food that deviated from the planned menus. According to Ms. Battles, Mr. Chicot had warned her that, if he got another call

expressing concern from the University, he would not be able to do anything for her. Following the call, Ms. Battles was sent home early.

On September 29, 2009, Ms. Battles was given a 30-day plan of action that outlined problems with her performance and a plan to correct them. Some of the problems addressed in this plan were that Ms. Battles could not terminate an employee without following proper procedure and using proper documentation, that she had to adhere to her food budget, that she could not change her menu without approval, and that she must order food a day ahead of time.

In late October and early November 2009, Ms. Battles encountered difficulties again. One day, she did not open her unit on time, and some food and beverage stations were out of stock. Another day, the unit was not ready, and food was out of stock. Another day, she was offering store-bought cheesecake when she had been told not to buy cakes and pies because her unit should make them to save money. A new chef was sent to her unit to try to help her because her food costs were well over budget, but the chef was unsuccessful in this attempt. Shortly thereafter, Ms. Battles complained again to Ms. Martinez; this time her complaint concerned the new chef and that he ordered her food. She did not mention any age-based harassment in the November 2009 complaint.

Sometime after November 2009, although Ms. Battles is uncertain when, she had a phone call with Mr. Stokes, Mr. Chicot, and Mr. Jenoure in which she claims she told them about the alleged belittling comments, including the dementia and Alzheimer's disease comments. This call lasted over an hour, and she covered a variety of subjects from the things she raised in her written complaints to an employee's allegedly receiving a citation for driving while intoxicated. Ms. Battles cannot remember the month this conversation occurred.

On December 15, 2009, Ms. Battles received a second disciplinary write-up, which was labeled "second warning written," for closing her unit early on December 4, 2009. Ms. Battles was advised that closing a unit early was a direct violation of the contract between Thompson Hospitality and UAPB and was warned that "any action that puts [their] contract at risk will be grounds for disciplinary action up to and including termination." Ms. Battles did not protest the write-up. She signed it and moved on. She does not allege any consequence of the second write-up.

Thompson Hospitality then became aware of irregularities with the cash receipts in Ms. Battles's unit and began to audit her cash sales. In the audit, it was discovered that Ms. Battles used her personal debit card or cash at least 45 times in the prior five months to purchase food and other supplies from consumer outlets to serve to the students. This was a direct violation of Thompson Hospitality's food ordering process, which requires the use of approved vendors. This exposed the company to potential liability for serving food from unapproved sources. Ms. Battles argues that "everyone" bought food from unapproved vendors. Thompson Hospitality denies any violations of this company policy by anyone other than Ms. Battles at UAPB. Ms. Battles's violation of company policy in this regard resulted in her third and final disciplinary warning. She was terminated by Mr. Chicot on March 23, 2010. At that time, she was 51 years old. Ms. Battles does not know who replaced her after she left. Thompson Hospitality states that the individual who took her place was actually older than Ms. Battles.

      **B.    Charge of Discrimination**

Following her termination, on June 1, 2010, Ms. Battles filed a charge with the Equal Employment Opportunity Commission ("EEOC"); it alleges only age discrimination in violation

of the ADEA. Ms. Battles did not check the EEOC box for retaliation when filing her charge nor did she check the box for race or gender discrimination.

### C.     Discrimination Allegations

Ms. Battles argues that she was denied training from the beginning of her employment, but she cannot specify what training she was denied or identify anyone who received training she did not receive. She argues that her termination was age-based discrimination because, in August 2009, her co-workers learned her age and a pattern of "harassment" ensued. She suspects the "harassment" was based on her age "[b]ecause there was no other reason. It didn't start until after [Mr. Stokes] found out [her] true age."

Ms. Battles denies that Mr. Stokes was involved in the decision to terminate her employment. She does not accuse Mr. Chicot of age discrimination. She attributes the age-based comments to Mr. Stokes only; she does not contend that Mr. Chicot made any age-based remarks to her.

### D.     Harassment Allegations

Ms. Battles admits that she received a copy of Thompson Hospitality's handbook and that it contained a discrimination/harassment policy. She understood that there were procedures to complain about harassment at Thompson Hospitality. The policy prohibits harassment based on age and identifies three company officials to whom reports can be made, including the employee's immediate manager, the Vice President of Human Resources, or any Executive Team member.

Ms. Battles claims the alleged harassment started shortly after her son visited her at work on August 4, 2009, because she contends this is when Mr. Stokes learned her age. Ms. Battles claims the alleged harassment included that: she was harassed about her food costs; her work

area was "sabotaged," items were deleted from her food orders, and she was set up to fail; she once had difficulty setting up a conference call with Mr. Stokes, she felt like he interrupted her work, and he put her on hold several times; if she wore a purple outfit, Mr. Stokes called her "Barney," and if she were a yellow outfit, Mr. Stokes called her "Big Bird;" Mr. Stokes commented about her cooking; co-workers used profanity; Mr. Stokes "disrespected" her in front of an employee; and Mr. Stokes made negative remarks to her.

While employed by Thompson Hospitality, Thompson Hospitality contends that Ms. Battles did not complain about unlawful harassment or unlawful age-based harassment. She did submit the September 11, 2009, and September 25, 2009, statements. Ms. Battles contends that she did mention during a phone call with Mr. Stokes, Mr. Chicot, and Mr. Jenoure the alleged belittling comments, including the dementia and Alzheimer's disease comments. This call lasted over an hour, and she covered a variety of subjects from the things she raised in her written complaints to an employee's allegedly receiving a citation for driving while intoxicated. Ms. Battles knows this call took place after an incident in November, but she cannot recall the month in which this call took place.

## II.   Summary Judgment Standard

Summary judgment is appropriate if the evidence, when viewed in the light most favorable to the nonmoving party, shows that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). However, parties opposing a summary judgment motion may not rest merely upon the allegations in their pleadings. *Buford v. Tremayne*, 747 F.2d 445, 447 (8th Cir. 1984). The initial burden is on the moving party to demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. The burden then shifts to the nonmoving party to

establish there is a genuine issue to be determined at trial. *Prudential Ins. Co. v. Hinkel*, 121 F.3d 364, 366 (8th Cir. 1997). A factual dispute is genuine if the evidence could cause a reasonable jury to return a verdict for either party. *Miner v. Local 373*, 513 F.3d 854, 860 (8th Cir. 2008). "The mere existence of a factual dispute is insufficient alone to bar summary judgment; rather, the dispute must be outcome determinative under prevailing law." *Celotex*, 477 U.S. at 331.

### III.   Analysis

Ms. Battles alleges against Thompson Hospitality claims for age discrimination under the ADEA, hostile work environment, and retaliation. Thompson Hospitality moves for summary judgment on these claims.

#### A.   Age Discrimination

Under the ADEA, individuals aged 40 and over are protected from employers discharging or otherwise discriminating against them on the basis of their age. 29 U.S.C. § 623(a)(1). To prove her claim, Ms. Battles must show, by a preponderance of the evidence, that age was the "but-for" cause of the challenged adverse employment action. *Haigh v. Gelita USA, Inc.*, 632 F.3d 464, 468 (8th Cir. 2011) (citing *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167 (2009) ("The burden of persuasion does not shift to the employer to show that it would have taken the action regardless of age, even when a plaintiff has produced some evidence that age was one motivating factor in that decision."); *Clark v. Matthews Int'l Corp.*, 628 F.3d 462, 469 (8th Cir. 2010) ("[The plaintiff] is required to prove that his age was the 'but-for' cause of [the employer's] challenged decisions regardless of whether he uses direct or circumstantial evidence to prove his age-discrimination claims.")). Ms. Battles can establish a *prima facie* claim of age discrimination either by providing direct evidence of discrimination or by creating an inference

of unlawful discrimination under the three-step analysis set out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-05 (1973). *Bone v. G4S Youth Services, LLC*, 686 F.3d 948, 953 (8th Cir. 2012).

Direct evidence is evidence "showing a specific link between the alleged discriminatory animus and the challenged decision, sufficient to support a finding by a reasonable fact finder that an illegitimate criterion actually motivated" the adverse employment action. *Torgerson v. City of Rochester*, 643 F.3d 1031, 1044 (8th Cir. 2011) (en banc). Therefore, "direct" refers to the causal strength of the proof, not whether it is "circumstantial" evidence. *Id.* A plaintiff with strong direct evidence that illegal discrimination motivated the employer's adverse action does not need the three-part *McDonnell Douglas* analysis to get to the jury, irrespective of whether his strong evidence is circumstantial. *Id.* However, "if the plaintiff lacks evidence that clearly points to the presence of an illegal motive, he must avoid summary judgment by creating the requisite inference of unlawful discrimination through the *McDonnell Douglas* analysis, including sufficient evidence of pretext." *Id.*

### 1. Direct Evidence Analysis

"Direct evidence is evidence showing a specific link between the alleged discriminatory animus and the challenged decision, sufficient to support a finding by a reasonable fact finder that an illegitimate criterion actually motivated the adverse employment action." *Ramlet v. E.F. Johnson Co.*, 507 F.3d 1149, 1152 (8th Cir. 2007) (internal quotation and alteration omitted). The Eighth Circuit has held that "'stray remarks in the workplace,' 'statements by nondecisionmakers,' and 'statements by decisionmakers unrelated to the decisional process' do not constitute direct evidence." *Schierhoff v. GlaxoSmithKline Consumer Healthcare, L.P.*, 444 F.3d 961, 966 (8th Cir. 2006) (quoting *Radabaugh v. Zip Feed Mills, Inc.*, 997 F.2d 444, 449

(8th Cir. 1993)). Direct evidence, nevertheless, "may include 'evidence of actions or remarks of the employer that reflect a discriminatory attitude,' 'comments which demonstrate a discriminatory animus in the decisional process,' or comments 'uttered by individuals closely involved in employment decisions.'" *King v. Hardesty*, 517 F.3d 1049, 1058 (8th Cir. 2008) (quoting *Beshears v. Asbill*, 930 F.2d 1348, 1354 (8th Cir. 1991)).

Ms. Battles asserts that direct evidence establishes that age discrimination motivated Thompson Hospitality to discipline and terminate her. Specifically, Ms. Battles cites to actions by Mr. Stokes. She contends that, once Mr. Stokes discovered her age, everything changed, including (a) unwarranted criticisms of her work, (b) inappropriate criticisms of her clothing, and (c) repeated comments in the presence of others alleging that Ms. Battles suffered from either dementia or Alzheimer's disease. Thompson Hospitality contends, and Ms. Battles's sworn testimony indicates, that Mr. Stokes was not the decisionmaker and that he did not agree with the decision to terminate her employment (Dkt. No. 73-1, at 70-71). For this reason, Ms. Battles alleges that Mr. Chicot, whom she contends was the decisionmaker and did terminate her, was used as the "cat's paw" to carry out Mr. Stokes's alleged discriminatory motive.

Thompson Hospitality argues as an initial matter that, because Ms. Battles does not present a submissible case of age discrimination, the Court need not determine whether she makes out an adequate case for cat's paw liability. *See Guimaraes v. Supervalu, Inc.*, 674 F.3d 962, 972 n.7 (8th Cir. 2012). The Court agrees with Thompson Hospitality that Ms. Battles fails to present a submissible case of age discrimination under the ADEA but will address the cat's paw theory she advances.

Thompson Hospitality also argues that the cat's paw theory should not be applied in the ADEA context because the ADEA requires a "but-for" link between the discriminatory animus

10

and the adverse employment action, as opposed to requiring only that the discriminatory animus be a "motivating factor" in the adverse employment decision. *See Gross*, 557 U.S. at 173-74 (citing the phrase "motivating factor" when determining the cat's paw theory applies in the USERRA context). For this reason, some courts that have examined the issue have rejected or questioned the application of the cat's paw theory in an ADEA case. *See, e.g., Sims v. MVM, Inc.*, 704 F.3d 1327 (11th Cir. 2013); *Simmons v. Sykes Enters., Inc.*, 647 F.3d 943, 949-50 (10th Cir. 2011); *Wojtanek v. Dist. No. 8, Int'l Ass'n of Machinists & Aero. Workers*, 435 Fed. Appx. 545, 549 (7th Cir. 2011). *See also Holliday v. Commonwealth Brands, Inc.*, 483 Fed. Appx. 917, 922 n.2 (5th Cir. 2012) (expressing doubt about the theory's application). Thompson Hospitality concedes the Eighth Circuit Court of Appeals has not addressed whether the cat's paw theory may be applied in the ADEA context.

Even if the cat's paw theory applies to this ADEA case, the Court concludes it does not apply on these facts. "In the employment discrimination context, the cat's paw refers to a situation in which a biased subordinate, who lacks decisionmaking power, uses the formal decisionmaker as a dupe in a deliberate scheme to trigger a discriminatory employment action." *Qamhiyah v. Iowa State Univ. of Sci. & Tech.*, 566 F.3d 733, 742 (8th Cir. 2009). *See also Richardson v. Sugg*, 448 F.3d 1046, 1060 (8th Cir. 2006) (internal quotations omitted) ("This circuit's cat's paw rule provides that an employer cannot shield itself from liability for unlawful termination by using a purportedly independent person or committee as the decisionmaker where the decisionmaker merely serves as the conduit, vehicle, or rubber stamp by which another achieves his or her unlawful design.").

In regard to the evidence of discriminatory animus, Ms. Battles admits that, after she transferred to the JBJ unit in early September 2009, she did not see Mr. Stokes much at all. She

11

estimated that, after early September 2009, Mr. Stokes came to her unit only eight times during the remainder of her employment. She went to his unit to help him a "few" times. According to Ms. Battles, his comments stopped in December 2009 or January 2010, and there was only one alleged "dementia" comment from Mr. Stokes between December 2009 and March 2010 when she was terminated. Thompson Hospitality contends that Mr. Chicot decided to terminate Ms. Battles after she had been written-up three times over a seven month period, with the final write-up and termination coming after he learned that she had been violating company policy when she purchased food from unapproved vendors for several months. According to Ms. Battles, Mr. Stokes told her that he asked Mr. Chicot to suspend her as a result of this but that Mr. Stokes was told by Mr. Chicot, "Hell no. Get rid of her" (Dkt. No. 73-1, at 70-71).

The cat's paw theory fails when the evidence shows that the actual decisionmaker made an independent determination regarding the termination, rather than acting as a "dupe." *Lacks v. Ferguson Reorganized School District R-2*, 147 F.3d 718 (8th Cir. 1998) (rejecting a "cat's paw" theory where the evidence showed unequivocally that the decisionmaker "made an independent determination" as to whether plaintiff should be terminated and did not act "merely as a conduit for the desires of the school's administrators"). Here, there is no proof that Mr. Chicot's decision to terminate Ms. Battles was in any way "tainted" by Mr. Stokes' alleged discriminatory animus. *See, e.g., Othman v. City of Country Club Hills*, 671 F.3d 672, 676 (8th Cir. 2012); *Diaz v. Tyson Fresh Meats, Inc.*, 643 F.3d 1149, 1152 (8th Cir. 2011). Ms. Battles's testimony also reveals that Mr. Chicot, the decisionmaker, never made any age-based comments to her (Dkt. No. 73-1, at 49-50). In fact, she does not even accuse Mr. Chicot of age discrimination (Dkt. No. 73-1, at 54, 74).

For these reasons, the Court concludes that Ms. Battles has not produced sufficient direct evidence of age-based discrimination to overcome summary judgment. Accordingly, the Court will proceed through the *McDonnell Douglas* analysis.

### 2. *McDonnell Douglas* analysis

The Court also applies the *McDonnell Douglas* analysis to Ms. Battle's age discrimination claim. To establish a *prima facie* case of age discrimination, Ms. Battles must show she: (1) was at least 40 years old, (2) suffered an adverse employment action, (3) was meeting her employer's legitimate expectations at the time of the adverse employment action, and (4) was replaced by an individual who was substantially younger. *Haigh*, 632 F.3d at 468. *See also Gibson v. American Greetings Corp.*, 670 F.3d 844, 856 (8th Cir. 2012); *Rahlf v. Mo-Tech Corp., Inc.*, 642 F.3d 633, 637 (8th Cir. 2011). She is permitted to prove her case alternatively by showing for the fourth element that "substantially younger, similar-situated employees were treated more favorably." *Onyiah v. St. Cloud State Univ.*, 684 F.3d 711, 719 (8th Cir. 2012). If she can establish a *prima facie* case, Thompson Hospitality must articulate "a non-discriminatory, legitimate justification for its conduct, which rebuts the employee's *prima facie* case." *Bone*, 686 F.3d at 954 (citing *Rodgers v. U.S. Bank, N.A.*, 417 F.3d 845, 850 (8th Cir. 2005), and quoting *Sprenger v. Fed. Home Loan Bank of Des Moines*, 253 F.3d 1106, 1111 (8th Cir. 2001)). Once Thompson Hospitality does so, then Ms. Battles must prove Thompson Hospitality's reason was "mere pretext for discrimination." *Gibson*, 670 F.3d at 856 (quoting *Haigh,* 632 F.3d at 468). "Furthermore, to succeed in proving age discrimination a plaintiff 'must show, by a preponderance of the evidence, that age was the 'but-for' cause of the challenged adverse employment action.'" *Id.* at 856.

Thompson Hospitality does not dispute that Ms. Battles meets the first two elements of establishing a *prima facie* case for age discrimination. Thompson Hospitality argues that Ms. Battles fails to meet the third and fourth elements. This Court agrees.

Thompson Hospitality argues that Ms. Battles's performance problems from September 2009 through March 2010 show that she was not meeting expectations and, therefore, cannot establish the third element of her *prima facie* case. Ms. Battles was put on a 30-day action plan on September 29, 2009. This action plan outlined problems with her performance and a plan to correct them. The criticisms outlined by the plan were specific and directed at performance issues. At the time she was terminated, Ms. Battles had been written up three times over a seven-month period. Each time, she signed the write-up without complaining that the write-up was motivated by her age or age-based discrimination. The last time she was written up, she violated Thompson Hospitality's policy by purchasing food from unapproved vendors which exposed Thompson Hospitality to potential liability.

Ms. Battles does not respond to Thompson Hospitality's argument that she fails to establish a *prima facie case.* The Court notes that Ms. Battles states that she her "work was satisfactory and she performed her duties without a complaint from [Mr.] Stokes, or anyone else for that matter, until that fateful day when [Mr.] Stokes learned of plaintiff's age." This argument is unsupported by cites to record evidence and does not address the substance of the write-ups she received.

As to the fourth element of her *prima facie* case, although Ms. Battles does not know who replaced her, Thompson Hospitality states that the individual who took her place was actually older than Ms. Battles. Ms. Battles has come forward with nothing to contradict this. Alternatively, Ms. Battles has come forward with insufficient evidence for a reasonable jury to

conclude that substantially younger, similarly-situated employees were treated more favorably. *Onyiah*, 684 F.3d at 719. Thompson Hospitality claims that Ms. Battles cites a single employee, Orlando Hall, who she claims was treated more favorably than she was treated (Dkt. No. 74 at 13-14). Ms. Battles does not even address this point in her response. Based on the record evidence, Ms. Battles and Mr. Hall held different positions and worked in different units, and there is nothing in the record regarding Mr. Hall's disciplinary history to demonstrate that he and Ms. Battles were similarly situated but treated differently.

Even if this Court assumes that Ms. Battles can establish a *prima facie* case of age discrimination and focuses its analysis at the pretext stage, Ms. Battles has failed to present adequate proof to overcome Thompson Hospitality's proffered legitimate, non-discriminatory reason for terminating her. *See, e.g., Bone*, 686 F.3d at 954 (focusing the summary judgment analysis on the pretext stage); *Thomas v. Runyon*, 108 F.3d 957, 959 (8th Cir. 1997) (same); *Ruby v. Springfield R-12 Public School District*, 76 F.3d 909, 911 (8th Cir. 1996) (same).

The burden on Thompson Hospitality to articulate a non-discriminatory, legitimate justification for its conduct is not onerous. *Bone*, 686 F.3d at 954. When reviewing the employer's articulated reasons for discharge, and the plaintiff's refutation thereof, this Court's "inquiry is limited to whether the employer gave an honest explanation of its behavior." *Wilking v. County of Ramsey*, 153 F.3d 869, 873 (8th Cir. 1998) (quoting *Harvey v. Anheuser-Busch, Inc.*, 38 F.3d 968, 973 (8th Cir. 1994)). "Accordingly, when an employer articulates a reason for discharging the plaintiff not forbidden by law, it is not our province to decide whether that reason was wise, fair, or even correct, ultimately, so long as it truly was the reason for the plaintiff's termination." *Wilking*, 153 F.3d at 873 (internal quotations and citations omitted). The Court concludes Thompson Hospitality has given a non-discriminatory, legitimate

justification for its conduct. Thompson Hospitality claims that Ms. Battles was terminated after she received three disciplinary write-ups over a seven month period.

Because Thompson Hospitality articulated a legitimate, non-discriminatory reason for discharging Ms. Battles, "the presumption of discrimination disappears, requiring the plaintiff to prove that the proffered justification is merely pretext for discrimination." *Bone*, 686 F.3d at 955. Ms. Battles has the burden of persuasion at all times. *Id*. To succeed in proving age discrimination, she must show, by a preponderance of the evidence, that age was the "but-for" cause of the challenged adverse employment action. *Gibson*, 670 F.3d at 856 (quoting *Haigh*, 632 F.3d at 468). When the Court views all of the record evidence in the light most favorable to Ms. Battles, the Court concludes Ms. Battles has failed to create a genuine issue of material fact as to pretext and has failed to offer sufficient evidence for a reasonable trier of fact to infer discrimination or determine, by a preponderance of the evidence, that age was the "but-for" cause of the challenged adverse employment action.

A plaintiff may show that an employer's stated reasons are pretextual by establishing that similarly situated employees were treated differently. *Martinez v. W.W. Grainger, Inc.*, 664 F.3d 225, 230 (8th Cir. 2011). However, to do so, the similarly situated employees must be similarly situated in all respects. *Amini v. City of Minneapolis*, 643 F.3d 1068, 1076 (8th Cir. 2011). At the pretext stage, the standard for determining whether employees are similarly situated is "rigorous." *Bone*, 686 F.3d at 956. "[T]he individuals used for comparison must have dealt with the same supervisor, have been subject to the same standards, and engaged in the same conduct without any mitigating or distinguishing circumstances." *E.E.O.C. v. Kohler Co.*, 335 F.3d 766, 776 (8th Cir. 2003).

In Ms. Battles's response, she argues that if she had been younger, she would have been viewed and evaluated less critically. Ms. Battles states that she was treated less favorably than younger employees (Dkt. No. 81). She does not identify any of these younger employees nor does she provide any evidence of how they were similarly situated to her. Ms. Battles contends that other Thompson Hospitality employees were afforded training she did not receive. She is unable to identify the training to which she refers and fails to identify those similarly situated employees outside the protected class who she contends were treated more favorably. Her general allegations are insufficient to survive summary judgment. *Gibson*, 670 F.3d at 854-5 (determining that plaintiff's "general allegations other employees did not receive written warnings for similar actions, or that younger, white employees with less seniority were given more favorable opportunities – without specifically identifying a similarly situated employee who is not African-American – is insufficient to survive summary judgment"). These allegations also are insufficient to support what Thompson Hospitality refers to as a "terms and condition" claim, if Ms. Battles intended to assert such a claim (Dkt. No. 74, at 18-20).

As for the alleged discriminatory remarks she contends Mr. Stokes made to her, remarks that have no "causal link" between the remark and the decisional process leading to termination do not suffice to create a triable issue. *Walton v. McDonnell Douglas Corp.*, 167 F.3d 423, 428 (8th Cir. 1999) (determining that stray remarks remote in time to the adverse employment action and without evidence to establish a "causal link" between the comments and the decisional process do not support a finding of pretext for intentional age discrimination). The timing and context of the comments Ms. Battles alleges Mr. Stokes made do not support a finding of pretext. Even according to Ms. Battles, the comments stopped in December 2009 or January 2010, and there was only one alleged "dementia" comment from Mr. Stokes between December 2009 and

March 2010 when she was terminated. Further, as discussed in the analysis above, Mr. Stokes was not the decisionmaker. Mr. Chicot was the decisionmaker, and Ms. Battles herself attributes no age-based comments or age discrimination to Mr. Chicot.

When the Court views all of the record evidence in the light most favorable to Ms. Battles, the Court concludes she has failed to present adequate proof to overcome Thompson Hospitality's proffered legitimate, non-discriminatory reason for terminating her. Based on the record evidence, the Court determines Ms. Battles has failed to create a genuine issue of material fact as to whether Thompson Hospitality's proffered legitimate, non-discriminatory reason for terminating her was merely a pretext for intentional age discrimination and has failed to offer sufficient evidence for a reasonable trier of fact to infer discrimination or determine, by a preponderance of the evidence, that age was the "but-for" cause of the challenged adverse employment action.

For all of these reasons, the Court grants Thompson Hospitality summary judgment on Ms. Battles's claims of age discrimination under the ADEA and will not proceed to examine the other arguments raised by Thompson Hospitality as to this claim.

### B. Hostile Work Environment

Ms. Battles alleges that she was subjected to aged-based comments that created a hostile work environment (Dkt. No. 49, ¶ 6). Thompson Hospitality contends that the ADEA provides no remedy for her hostile environment claim and, even if it did, Ms. Battles could not establish a cognizable claim based on these facts. Ms. Battles makes no direct response to this argument in her opposition brief. Even if the ADEA provides a remedy for her hostile environment claim, this Court concludes that Ms. Battles has come forward with insufficient evidence from which a reasonable jury could find in her favor on this claim. *See Peterson v. Scott County*, 406 F.3d 515, 524 (8th Cir. 2005), *abrogated in part on other grounds by Torgerson*, 643 F.3d 1031;

*Breeding v. Arthur J. Gallagher & Co.*, 164 F.3d 1151, 1159 (8th Cir. 1999), *abrogated in part on other grounds by Torgerson*, 643 F.3d 1031. Therefore, the Court grants summary judgment to Thompson Hospitality on this claim and will not proceed to examine the other arguments raised by Thompson Hospitality as to this claim.

### C. Retaliation

In Ms. Battle's Amended Complaint she alleges that "[w]hen she complained of disparate treatment, she was discharged from employment on March 23, 2010" (Dkt. No. 49, ¶ 6). Her EEOC charge only alleges age discrimination in violation of the ADEA. Ms. Battles did not check the box for retaliation on the EEOC form nor did she check the boxes for race or gender discrimination. Thompson Hospitality contends in support of its motion for summary judgment that Ms. Battles did not allege retaliation before the EEOC and that her retaliation claim is therefore barred for failure to exhaust administrative remedies. *See Tyler v. Univ. of Ark. Bd. of Trustees*, 628 F.3d 980, 989 (8th Cir. 2011). Ms. Battles makes no direct response to this argument in her opposition brief. This Court agrees that Ms. Battles did not check the retaliation box on her EEOC charge and that, therefore, she failed to exhaust her administrative remedies as to her retaliation claim. Although she could in theory overcome this hurdle by showing her retaliation claims were "like or reasonably related to the substance of the charges timely brought before the EEOC," *Williams v. Little Rock Mun. Water Works*, 21 F.3d 218, 222 (8th Cir. 1994), she does not do so and may not do so on the facts of this case. Therefore, the Court grants summary judgment to Thompson Hospitality on this claim and will not proceed to examine the other arguments raised by Thompson Hospitality as to this claim.

* * *

For the reasons discussed, the Court finds that Thompson Hospitality's motion for summary judgment as to all of Ms. Battles's claims should be and hereby is granted. Ms. Battles's age discrimination claims under the ADEA, hostile work environment claim, and retaliation claim are dismissed with prejudice. Thompson Hospitality's pending motion *in limine* is denied as moot; the motion should be termed by the Clerk (Dkt. No. 85).

IT IS SO ORDERED this 9th day of April, 2013.

_____
KRISTINE G. BAKER
UNITED STATES DISTRICT JUDGE